JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

CATHY BEAZLEY

## DEFENDANTS

COMCAST CORPORATION; COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC; COMCAST (CC) OF WILLOW GROVE,; & MICHAEL DELCIELLO

**(b)** County of Residence of First Listed Plaintiff   King
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Lane J. Schiff , Esquire
Console Mattiacci Law LLC, 1525 Locust Street, 9th Floor
Philadelphia, PA 19102 215-545-7676

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1   U.S. Government Plaintiff | ☒ 3   Federal Question *(U.S. Government Not a Party)* |
| ☐ 2   U.S. Government Defendant | ☐ 4   Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. §2000e, et seq.  ("Title VII"); 43 P.S. §951, et seq. ("PHRA"), Phila. Code §9-1101, et seq. ("PFPO")
Brief description of cause:
Plaintiff brings this action against her former employers for unlawful  discrimination, retaliation and harassment.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
excess of $75,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE
December 2, 2020

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## DESIGNATION FORM

*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ Bothell, Washington _____

Address of Defendant: _____ 1701 John F. Kennedy Boulevard, Philadelphia, PA 19103 _____

Place of Accident, Incident or Transaction: _____

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? — Yes ☐  No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? — Yes ☐  No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court? — Yes ☐  No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual? — Yes ☐  No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 12/2/2020 _____ _Attorney-at-Law / Pro Se Plaintiff_ _____ 314179 _Attorney I.D. # (if applicable)_

---

**CIVIL: (Place a √ in one category only)**

*A. Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☑ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
    *(Please specify):* _____

*B. Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
    *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Lane J. Schiff, Esquire _____, counsel of record *or* pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: 12/2/2020 _____ _Attorney-at-Law / Pro Se Plaintiff_ _____ 314179 _Attorney I.D. # (if applicable)_

2

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

CATHY BEAZLEY : CIVIL ACTION
          PLAINTIFF, :
             v. :
COMCAST CORPORATION; COMCAST CABLE :
COMMUNICATIONS MANAGEMENT, LLC, COMCAST (CC) :
WILLOW GROVE, & MICHAEL DELCIELLO : NO.
          DEFENDANTS.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. ( X )

December 2, 2020                                             Plaintiff, Cathy Beazley

_____      _____      _____
**Date**                        **Attorney-at-law**         **Attorney for**

(215) 545-7676            (215) 405-2964         schiff@consolelaw.com

_____      _____      _____
**Telephone**                    **FAX Number**           **E-Mail Address**

(Civ. 660) 10/02

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CATHY BEAZLEY** | : | |
| **Bothell, Washington** | : | **CIVIL ACTION NO.** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **COMCAST CORPORATION; COMCAST** | : | |
| **CABLE COMMUNICATIONS** | : | |
| **MANAGEMENT LLC; COMCAST (CC) OF** | : | |
| **WILLOW GROVE; & MICHAEL** | : | |
| **DELCIELLO** | : | |
| **1701 John F. Kennedy Boulevard** | : | |
| **Philadelphia, PA 19103** | : | |
| | : | **JURY TRIAL DEMANDED** |
| | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

## CIVIL ACTION COMPLAINT

### I.   INTRODUCTION

Plaintiff, Cathy Beazley, brings this action against her former employers, Comcast

Corporation, Comcast Cable Communications Management, LLC, and Comcast (CC) of Willow

Grove and against Michael DelCiello, her former second level supervisor, for invidious and

unlawful sex discrimination, retaliation, and harassment, which culminated with the termination

of her employment.  Defendants' actions violated Title VII of the Civil Rights Act of 1964, as

amended, 42 U.S.C. §2000e, *et seq.*  ("Title VII"), the Pennsylvania Human Relations Act, as

amended, 43 P.S. §951, *et seq.* (hereinafter "PHRA"), and the Philadelphia Fair Practices

Ordinance, as amended, Phila. Code §9-1101, *et seq.* ("PFPO").  Plaintiff seeks damages,

including back-pay, front-pay, compensatory, punitive, costs and attorneys' fees, and all other

relief that this Court deems appropriate.

## II.   **PARTIES**

1.      Plaintiff, Cathy Beazley, is an individual and a citizen of the State of Washington. She resides in Bothell, Washington.

2.      Defendant Comcast Corporation is a corporation with a principal place of business at 1701 John F. Kennedy Boulevard, Philadelphia, Pennsylvania 19103.

3.      Defendant Comcast Cable Communications Management, LLC is limited liability company with a principal place of business at 1701 John F. Kennedy Boulevard, Philadelphia, Pennsylvania 19103.

4.      Defendant Comcast (CC) of Willow Grove is a company with a principal place of business at 1701 John F. Kennedy Boulevard, Philadelphia, Pennsylvania 19103.

5.      At all times material hereto, Comcast Corporation, Comcast Cable Communications Management, LLC, and Comcast (CC) of Willow Grove (collectively referred to as "Comcast") collectively constituted Plaintiff's employers under the joint and/or single employer doctrine.   Upon information and belief, Comcast shared common management, had interrelated operations, and collectively controlled Plaintiff's job duties and responsibilities.

6.      At all times material hereto, Comcast acted by and through its authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Comcast and in furtherance of Comcast's business.

7.      Defendant Michael DelCiello (hereinafter "DelCiello") is an employee of Comcast and holds the position of Senior Vice President, Business Development, Strategic Planning & Development.   At all times relevant hereto, DelCiello was Plaintiff's second level supervisor.

8.      DelCiello is an individual and a citizen of the Commonwealth of Pennsylvania. He resides in Berwyn, Pennsylvania.

9.      At all times material hereto, DelCiello willfully and knowingly committed, aided, abetted, incited, compelled and/or coerced Comcast's unlawful conduct as complained of herein.

10.      At all times material hereto, Comcast was an employer within the meanings of the Title VII, PHRA, and PFPO.

11.      At all times material hereto, Plaintiff was an employee within the meanings of the Title VII, PHRA, and PFPO

12.      At all times material hereto, DelCiello was subject to and liable under the PHRA and PFPO.

## III.    <u>JURISDICTION AND VENUE</u>

13.      The causes of action that form the basis of this matter arise under VII, the PHRA, and PFPO.

14.      The District Court has jurisdiction over Count I (Title VII), pursuant to 28 U.S.C. §1331.

15.      The District Court has jurisdiction over Count II (PHRA) and Count III (PFPO) pursuant to 28 U.S.C. §1332 since the amount in controversy in the present action exceeds the sum or value of seventy five thousand dollars ($75,000), exclusive of interests and costs, and where there exists complete diversity of citizenship, as Plaintiff is a citizen of the State of Washington and Defendants are not citizens of the State of Washington.

16.      The District Court additionally has supplemental jurisdiction over Counts II and III pursuant to 28 U.S.C. §1367.

3

17.     Venue is proper in the District Court pursuant to 28 U.S.C. §1391(b) and 42 U.S.C. §2000e-5.

18.     On or about November 29, 2018, Plaintiff filed a Complaint with the Pennsylvania Human Relations Commission ("PHRC"), cross filed with the Equal Employment Opportunity Commission ("EEOC").   Attached hereto, incorporated herein, and marked as Exhibit "A" is a true and correct copy of the PHRC Complaint (with personal identifying information redacted).

19.     On or about February 28, 2019, Plaintiff filed a Second Complaint with the PHRC, cross filed with the EEOC.  Attached hereto, incorporated herein, and marked as Exhibit "B" is a true and correct copy of the PHRC Complaint (with personal identifying information redacted).

20.     On or about June 26, 2019, Plaintiff filed a Third Complaint with the PHRC, cross filed with the EEOC.  Attached hereto, incorporated herein, and marked as Exhibit "C" is a true and correct copy of the PHRC Complaint (with personal identifying information redacted).

21.     On September 10, 2020, the EEOC issued to Plaintiff a Notice of Right to Sue. Attached hereto, incorporated herein, and marked as Exhibit "D" is a true and correct copy of this notice (with minor redactions for purposes of electronic filing of confidential/identifying information).

22.     Plaintiff is filing this complaint within ninety (90) days from her receipt of this notice.

23.     Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

## IV.    <u>FACTUAL ALLEGATIONS</u>

24.    Plaintiff was employed by Comcast from on or about June 5, 2017 until on or about June 19, 2019.

25.    Plaintiff held the position of Director of Strategic Business Development.

26.    Plaintiff consistently performed her job duties in a highly competent manner.

27.    Plaintiff reported to Joshua Goldberg, Vice President of Strategic Development. Goldberg reported to DelCiello.

28.    In or about late November 2017, while on a business trip with DelCiello, DelCiello invited Plaintiff to go with him to a "burlesque show," which is a bar with scantily clad females performing on stage, at a nightclub.

29.    Plaintiff was offended and denied the request.

30.    In or about late 2017, on two (2) occasions during meetings in DelCiello's office, he presented Plaintiff with photos of high-level male executives at Comcast, and asked Plaintiff about her attraction to those individuals. Plaintiff refused to answer and told him that she would never date a married man.

31.    DelCiello informed Plaintiff that he tracks his wife via GPS and showed Plaintiff how he did so.

32.    In or about early January 2018, DelCiello stated that he would not complete a certain project with Plaintiff unless it was on a Friday night over a bottle of wine.

33.    In or about mid-January 2018, DelCiello was asked if he had any announcements to present at an upcoming meeting, DelCiello responded that he would like to announce that Plaintiff was pregnant. Plaintiff was not pregnant.

5

34.     Plaintiff repeatedly rebuffed DelCiello's efforts to engage in a personal relationship with her.

35.     In or about April 2018, during a meeting, DelCiello told a Director of Business Development at Amazon, that Plaintiff would do anything for money.

36.     In or about late April 2018, DelCiello threatened to remove a portion of Plaintiff's job duties and responsibilities if he found out that Plaintiff was looking to leave Comcast's Philadelphia office.

37.     In or about May 2018, Plaintiff found DelCiello alone in her office with the door closed.  DelCiello offered no explanation for his actions.

38.     When Plaintiff commenced employment, Comcast provided her with a refurbished Apple computer and iPhone. DelCiello instructed Plaintiff to connect her personal iCloud account to her work computer and work cell phone.   iCloud is a storage and cloud computing service that enables users to store information and data on their phone.

39.     Throughout early to mid-2018, Plaintiff's personal and professional work devices, accounts, and information were accessed without authorization.   For example, and without limitation:

        a.      Plaintiff received notification that a Tinder account, which is a dating application, was attempting to be set up with her work cell phone number.

        b.      While traveling for work, Plaintiff's work cell phone service was disconnected.

        c.      Calendar invitations and emails were deleted from Plaintiff's work computer, resulting in her missing work meetings and emails.

6

d.    Text messages sent from DelCiello to Plaintiff were deleted from Plaintiff's work phone, including the text message where DelCiello invited Plaintiff to the burlesque show at a nightclub.

e.    Fraudulent LinkedIn profiles were created with Plaintiff's name and employment history.

f.    Plaintiff's iCloud account and LinkedIn account were accessed by third parties.

g.    Plaintiff's find my iPhone feature on her iPhone, which is a GPS tracking application, was remotely turned on after Plaintiff had previously turned off the application.

h.    Plaintiff's employee network account credentials were used to access documents on sites developed and administered by DelCiello.

i.    Remote access to Plaintiff's computer was turned on.

40.    Plaintiff believes and therefore avers that DelCiello was the individual who accessed her personal and professional information and accounts without authorization.

41.    In or about June 2018, Plaintiff reported the security breaches to her personal and work accounts to Comcast.

42.    In or about June and July 2018, Plaintiff complained to Nicole Chisolm, Senior Director, Human Resources, on multiple occasions regarding DelCiello. Plaintiff complained that DelCiello was subjecting her to sex discrimination, including impermissibly accessing her personal and work accounts.

43.     Plaintiff complained that she believed DelCiello was treating her unlawfully because he wanted to have a personal relationship with her, and because Plaintiff had rebuffed his advances.

44.     Comcast failed to take appropriate remedial or preventative action in response to Plaintiff's complaints.

45.     In or about September 2018, after Comcast installed a security camera in Plaintiff's office, DelCiello instructed Plaintiff to move to a new office.  The new office did not have a security camera and was in DelCiello's direct line of sight.

46.     DelCiello made this request even though Comcast had a moratorium on employees moving offices at that time.

47.     On or about September 7, 2018, Plaintiff applied for an open Executive Director, Strategy and Business Operations position.  This position constituted a promotion.

48.     In or about early October 2018, when DelCiello learned that Plaintiff had applied for the promotion, he stated to Plaintiff that he hopes she is not trying to get away from something.

49.     On or about October 4, 2018, Chisolm informed Plaintiff that DelCiello approached her and demanded to know what position Plaintiff was pursuing.

50.     Around that time, DelCiello told Plaintiff that he would like to live a life of crime, that it would be so easy and thrilling, that he could make so much money, and that he could open some offshore accounts in the Cayman Islands.

51.     In or about October 2018, Plaintiff again complained to Chisholm on multiple occasions regarding DelCiello's sex discriminatory and retaliatory conduct toward Plaintiff and that the security of her accounts was still not resolved.

8

52.     Comcast failed to take appropriate and corrective remedial action.

53.     As a result of Comcast's failure, Plaintiff continued to be subjected to discrimination, harassment, and retaliation.

54.     In or about late October 2018, Comcast removed from her responsibility a significant project on which she was working.   The project was assigned to a less qualified male employee, Premal Shah, Director of Strategic Development.

55.     On or about November 26, 2018, Comcast failed to promote Plaintiff to Executive Director, Strategy and Operations position.

56.     Comcast offered no explanation, including the selection criteria, as to why Comcast made the decision.

57.     Comcast promoted a less qualified individual.

58.     Plaintiff's personal and professional work devices, accounts, and information continued to be accessed without authorization.  For example, and without limitation:

a.      Plaintiff's iCloud account, bank account, and LinkedIn account were accessed by third parties.

b.      On or about October 29, 2018, DelCiello told Plaintiff that she should report her concerns of unlawful activity to William J.T. Strahan, Executive Vice President, Human Resources. The following day, Plaintiff's personal LinkedIn account was following Strahan.

c.      At or around that time, Plaintiff received notification from LinkedIn that someone logged onto her account from Comcast.

d.      Plaintiff's two step verification for her personal wireless internet account, which provides added security, was removed.

e.     Plaintiff discovered a hidden folder on her computer that contained work related documents, including calendar invitations and emails, that had been deleted on her work computer.

f.     Plaintiff's employee credentials were used to access confidential documents and information unrelated to Plaintiff's work, making it incorrectly appear to other employees that Plaintiff was improperly seeking out and viewing these items.

59.     Plaintiff believes and therefore avers that DelCiello was the individual who accessed her personal and professional information and accounts without authorization.

60.     On or about November 26, 2018, Plaintiff complained to Delaney Huffman, Senior Employee Relations Specialist regarding the discriminatory and retaliatory conduct to which she was being subjected.

61.     On or about November 29, 2018, Plaintiff filed a Complaint with the Pennsylvania Human Relations Commission, attached hereto as Exhibit A.

62.     On or about November 29, 2018, Plaintiff informed Comcast, including Goldberg, DelCiello, Chisholm, and Huffman, that she filed a Complaint with the PHRC.

63.     Comcast failed to take appropriate remedial and corrective action.

64.     As a result of Comcast's failure, Plaintiff continued to be subjected to discrimination, harassment, and retaliation.

65.     Comcast excluded Plaintiff from meetings and assigned her administrative tasks.

66.     On or about December 3, 2018, Comcast falsely accused Plaintiff of violating Comcast's Code of Conduct and travel policy.

67.     Plaintiff's personal and professional work devices, accounts, and information continued to be accessed without authorization.  For example, and without limitation:

a.      On numerous occasions, documents and files were shuffled around in Plaintiff's office, her personal belongings were sifted through, and her locked desk had been opened and accessed.

b.      In or about January 2019, Plaintiff learned that Comcast had a second iPhone registered in her name which was not in Plaintiff's possession.

c.      In or about late January 2019, Plaintiff was told that Comcast had a second apple computer assigned to her which was not in Plaintiff's possession.

d.      Plaintiff's corporate credentials were impermissibly used to log in and delete Plaintiff's positive 2017 performance review and her 2018 performance self-assessment detailing her accomplishments over the past year.

68.     On or about January 25, 2019, Plaintiff complained to Harrison Lee, Employee Relations, and Huffman about the continued sex discrimination and retaliation to which she was being subjected, including that she "continue[d] to experience suspicious activity" in her office and in her personal and professional devices, has been treated in a "hostile and dismissive" manner, and has been excluded "from importing meetings."

69.     On or about January 28, 2019, Comcast informed Plaintiff the cybersecurity and information technology investigation into the unauthorized access to her systems and documents by someone using her corporate credentials was closed and that Comcast could not or would not identify the perpetrator.

70.     On or about January 30, 2019, in a meeting with Lee and Huffman, Plaintiff was told that the investigation into her sex discrimination and retaliation complaints was closed, and that Comcast could not validate the concerns regarding DelCiello or confirm that any of the incidents outlined in her complaint actually took place.

71.     On or about February 4, 2019, Plaintiff received a negative year-end performance review, stating that she was "not meeting expectations" and was rated as "Off Track."   This performance review was unjustified.

72.     On or about February 20, 2019, Plaintiff emailed Goldberg, DelCiello, Chisolm, Huffman, and Lee complaining of sex discrimination and retaliation.

73.     On or about February 27, 2019, Plaintiff received a significantly smaller annual bonus than she had received in the previous year.

74.     On February 28, 2019, Plaintiff filed a second Complaint with the PHRC, attached hereto as Exhibit B.

75.     On February 28, 2019, Plaintiff informed Comcast, including Goldberg, DelCiello, Chisolm, Huffman, and Lee, that she filed the Complaint.

76.     Comcast failed to take appropriate remedial or preventative action in response to her complaints.

77.     As a result of Comcast's failure, Plaintiff continued to be subjected to discrimination, harassment, and retaliation.

78.     As a result of the continued harassment, Plaintiff complained again to Comcast in or about March 2019 and April 2019.

79.     On or about April 18, 2019, Comcast placed Plaintiff on a thirty (30) day Coaching Plan.  Plaintiff's performance did not warrant a Coaching Plan.

80.     In or about April 2019, Comcast removed another significant project on which Plaintiff was working.  Comcast assigned the project to Shah.

81.     On or about May 20, 2019, Plaintiff was placed on a thirty (30) day Performance Improvement Plan ("PIP").  Plaintiff's performance did not warrant a PIP.

82.     On or about June 3, 2019, Plaintiff applied for the posted role of Executive Director, Business Development within the Strategic Development team. This position constituted a promotion.

83.     On or about June 4, 2019, Comcast denied Plaintiff's application.  Comcast stated that Plaintiff was "not eligible to transfer internally while [Plaintiff was] on a performance improvement plan."

84.     Shortly before this, on May 2, 2019, Plaintiff's apartment was broken into at 5:30 P.M., while was on a conference call at work.

85.     When Plaintiff arrived home following the break-in, her underwear, which was in a suitcase near the door, was removed and placed in the kitchen.

86.     Plaintiff subsequently viewed video surveillance from the lobby of her apartment building on May 2, 2019. The surveillance showed a man, who strongly resembles DelCiello, exiting the elevator in the lobby of Plaintiff's apartment building shortly after the break-in.

87.     Plaintiff believes and therefore avers that DelCiello was the individual who broke into her apartment.

88.     On June 5, 2019, Plaintiff sent a written complaint to Comcast, stating, "in connection with the recent break-ins to my apartment, there is video footage. I have serious concerns that the person shown in the video is Michael DelCiello. I am petrified by this fact."

89.     On June 19, 2019, Comcast terminated Plaintiff's employment, effective immediately.

90.     Comcast alleges that Plaintiff was terminated for making her June 5, 2019 complaint.

13

91.     Plaintiff's engaging in protected activity was a determinative and motivating factor in the decision to terminate her employment.

92.     Plaintiff's engaging in protected activity was a determinative and motivating factor in the decision not to promote her to the position of Executive Director, Strategy and Operations.

93.     Plaintiff's engaging in protected activity was a determinative and motivating factor in the decision not to promote her to the position of Executive Director, Business Development within the Strategic Development Team.

94.     Plaintiff's engaging in protected activity was a determinative and motivating factor in the retaliatory and harassing treatment alleged herein, including, without limitation, accessing her personal and work devices, accounts, information, and property without authorization, removing her work responsibilities, issuing her a performance rating of "Off Track", reducing her annual bonus, placing her on a Coaching Plan, and placing her on a PIP.

95.     Plaintiff's sex was a determinative and motivating factor in the decision to terminate her employment.

96.     Plaintiff's sex was a determinative and motivating factor in the discriminatory and harassing treatment outlined herein, including, without limitation, accessing her personal and work devices, accounts, information, and property without authorization, removing her work responsibilities, issuing her a performance rating of "Off Track", reducing her annual bonus, placing her on a Coaching Plan, and placing her on a PIP.

97.     Comcast's conduct would dissuade a reasonable employee from making complaints.

14

98.     Comcast failed to prevent or address the discriminatory and retaliatory conduct referred to herein and further failed to take corrective and/or remedial measures to make the workplace free of discriminatory and retaliatory conduct.

99.     Plaintiff was subjected to severe and/or pervasive conduct that interfered with her ability to perform her job duties and was not welcomed by Plaintiff, thereby creating a hostile work environment.

100.    The conduct to which Plaintiff was subjected was so severe and/or pervasive that a reasonable person in Plaintiff's position would find the work environment to be hostile and/or abusive.

101.    At all times material hereto, DelCiello willfully and knowingly committed, aided, abetted, incited, compelled and/or coerced Comcast's unlawful conduct as complained of herein

102.    As a direct and proximate result of the discriminatory conduct of Defendants, Plaintiff has in the past incurred, and may in the future incur, a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures.

103.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of the unlawful behavior complained of herein unless and until this Court grants the relief requested herein.

104.    In connection with the discrimination, retaliation, and harassment to which Plaintiff was subjected, management level officials personally acted with malice or reckless indifference to Plaintiff's rights, thereby warranting the imposition of punitive damages.

## **COUNT I – Title VII**

105.    Plaintiff incorporates herein by reference the paragraphs above, as if set forth herein in their entirety.

106.    By committing the foregoing acts of discrimination, retaliation, and harassment against Plaintiff, Defendants violated Title VII.

107.    Defendants acted with malice or a reckless indifference to Plaintiff's rights, thereby warranting the imposition of punitive damages.

108.    As a direct and proximate result of Defendants' violations of Title VII, Plaintiff has suffered the injuries, damages, and losses set forth herein.

109.    Plaintiff has incurred and is entitled to all costs and reasonable attorneys' fees incurred as a result of the unlawful behavior complained of herein.

110.    No previous application has been made for the relief requested herein.

## **COUNT II – PHRA**

111.    Plaintiff incorporates herein by reference the paragraphs above, as if set forth at length herein.

112.    By committing the foregoing acts of discrimination, retaliation and harassment against Plaintiff, Defendants violated the PHRA.

113.    As a direct and proximate result of Defendants' violation of the PHRA, Plaintiff has sustained the injuries, damages, and losses set forth herein.

114.    Plaintiff has incurred and is entitled to all costs and reasonable attorneys' fees incurred as a result of the unlawful behavior complained of herein.

115.    No previous application has been made for the relief requested herein.

16

**COUNT III – PFPO**

116.    Plaintiff incorporates herein by reference the paragraphs above, as if set forth herein in their entirety.

117.    By discriminating, retaliating, and harassing Plaintiff, Defendants violated the PFPO.

118.    Said violations warrant the imposition of punitive damages.

119.    As a direct and proximate result of Defendant's violation of the PFPO, Plaintiff has suffered the injuries, damages, and losses set forth herein.

120.    Plaintiff has incurred and is entitled to reasonable costs and attorneys' fees incurred as a result of the unlawful behavior complained of herein.

121.    No previous application has been made for the relief requested herein.


**RELIEF**

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendants' improper conduct, and specifically prays that the Court grant the following relief to the Plaintiff by:

a.    declaring the acts and practices complained of herein to be a violation of Title VII;

b.    declaring the acts and practices complained of herein to be a violation of the PHRA;

c.    declaring the acts and practices complained of herein to be in violation of the PFPO;

d.    enjoining and restraining permanently the violations alleged herein;

17

e.      awarding Plaintiff back-pay;

f.      awarding Plaintiff front-pay;

g.      awarding interest;

h.      awarding compensatory damages to Plaintiff for past and future emotional upset and pain and suffering;

i.      awarding punitive damages;

j.      awarding Plaintiff the costs of this action, together with reasonable attorneys' fees;

k.      awarding Plaintiff such other damages as are appropriate under Title VII, the PHRA, and PFPO; and

l.      granting such other and further relief as this Court deems appropriate.


                              **CONSOLE MATTIACCI LAW, LLC**


Date:  December 2, 2020          By:    _____
                                        STEPHEN G. CONSOLE
                                        LANE J. SCHIFF
                                        ANNA NORMAN
                                        1525 Locust Street
                                        Philadelphia, PA 19102
                                        (215) 545-7676
                                        (856) 545-8211 (fax)

                                        Attorneys for Plaintiff,
                                        Cathy Beazley

# EXHIBIT A

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

Received

NOV 2 9 2018

PA Human Relations Commission
Philadelphia Regional Office

## COMPLAINT

| | |
|---|---|
| COMPLAINANT: | : |
| **CATHY BEAZLEY** | : |
| v. | : |
| RESPONDENTS: | : |
| **COMCAST CORPORATION** | : |
| and | : |
| **COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC** | : |
| and | : |
| **COMCAST (CC) OF WILLOW GROVE** | : |
| and | : |
| **MICHAEL DELCIELLO, aider and abettor** | : |

Docket No. *2018302570*

1. The Complainant herein is:

   Name:    Cathy Beazley
   Address: REDACTED
            Philadelphia, PA 19103

2. The Respondents herein are:

   Names:   Comcast Corporation, Comcast Cable Communications Management,
            LLC, and Comcast (CC) of Willow Grove (collectively, "Respondent
            Comcast"); Michael DelCiello, aider and abettor ("Respondent
            DelCiello")
   Address: 1701 JFK Boulevard
            Philadelphia, PA 19103

3.  I, <u>Cathy Beazley</u>, the Complainant herein, allege that I was subjected to unlawful discrimination because of my sex (female) and unlawful retaliation because of my complaints of unlawful sex discrimination, as set forth below:

**Discrimination and Retaliation**

**A.  I specifically allege:**

[1]      I began working at Respondent Comcast on or about June 5, 2017.  I am a current employee of Respondent Comcast.  I consistently perform my job duties in a highly competent manner.

[2]      I hold the position of Director of Strategic Business Development.

[3]      I report to Joshua Goldberg (male), Vice President of Strategic Development.  Goldberg reports to Respondent Michael DelCiello (male), Managing Director of Strategic Development.  Respondent DelCiello reports to Samuel Schwartz (male), Chief Business Development Officer.

[4]      When I began working at Respondent Comcast, I was provided with a configured Mac computer and iPhone.

[5]      Respondent DelCiello instructed that I connect my personal Apple iCloud account to my work computer and work cell phone so that he could iMessage me at any time.  I followed Respondent DelCiello's instruction.

[6]      Respondent DelCiello showed me that he tracks his wife via GPS.  Respondent DelCiello pulled up a tracking mechanism on his computer, which appeared to show his wife's exact location, and said: let's check to see if she's home.

[7]      After meeting with Respondent DelCiello, I disabled the Find My iPhone function on my work and personal cell phones.

[8]       I discovered that Respondent DelCiello was constantly accessing my iCloud account and turning on my Find My iPhone GPS tracker.  I continued to turn off the Find My iPhone feature, to no avail.

[9]       In late November 2017, while on a business trip with Respondent DelCiello, Respondent DelCiello invited me to go with him to a "burlesque show" at a nightclub. I declined the invitation.  I understood Respondent DelCiello's invitation to be for me to go to a bar with my second-level supervisor to watch scantily-clad females performance on a stage.  I was offended by the request.

[10]      In or about late 2017, on two (2) occasions during meetings in Respondent DelCiello's office, Respondent DelCiello presented me with photos of high-level male executives at Respondent Comcast, and asked me which ones I was attracted to.  I refused to answer, and told him that I would never date a married man.  Wyatt Manor (male), Vice President of Strategic Development, was present during one (1) of these meetings.

[11]      On January 9, 2018, during a meeting, Respondent DelCiello stated that he would not complete a certain project with me unless it was on a Friday night over a bottle of wine.  Brittany Dray (female), Project Manager, was present during this meeting.

[12]      In mid-January 2018, when Colleen Keenan (female), Director of Strategic Development, asked Respondent DelCiello if he had any announcements to present at the upcoming all-hands meeting, Respondent DelCiello stated: "yes, I would like to announce that Cathy [meaning me] is pregnant."  Manor, who was also present, laughed.  I was not pregnant at the time and was offended by the comment.

[13]      On February 2, 2018, I discovered that multiple fraudulent LinkedIn profiles were created with my name and employment history.

[14]     On February 10, 2018, while traveling for work, my work cell phone service was disconnected and had to be reactivated upon my return to work. Respondent Comcast's information technology team was unable to provide an explanation as to why my cell phone service was disconnected or who made the request to disconnect my cell phone service.

[15]     On February 26, 2018, I received a text message on my work cell phone, stating that a Tinder account was attempting to be set up with my cell phone number. Tinder is a dating application. I was never a member of Tinder.

[16]     I repeatedly rebuffed Respondent DelCiello's efforts to engage in a personal relationship with me.

[17]     In or about March 2018, Respondent DelCiello began unjustly criticizing my performance, and treating me in a hostile and demeaning manner—differently, and worse, than how he treated male employees.

[18]     In or about March 2018, Respondent Comcast began excluding me from work trips related to my job duties and responsibilities. On multiple occasions, Respondent DelCiello and Goldberg did not invite me on work trips and did not tell me they were going on the trips that directly related to my job duties and responsibilities.

[19]     On April 10, 2018, during a meeting, Respondent DelCiello told Mark Holloway (male), Director of Business Development at Amazon, that I would do anything for money.

[20]     On or about April 13, 2018, Goldberg met with David Wong (male), Director of Strategic Business Development, regarding Wong's career goals. Goldberg never met with me about my career goals.

[21]     In late April 2018, Respondent DelCiello threatened to take away a portion of my job duties and responsibilities if he found out that I was looking for a job outside of Respondent Comcast.

[22]     In May 2018, I noticed that calendar invitations and emails were being deleted remotely from my work computer. As a result, I missed numerous important work meetings and emails.

[23]     In May 2018, I noticed that certain text messages, sent from Respondent DelCiello to me, were deleted from my work phone. One of these deleted text messages was when Respondent DelCiello invited me to the burlesque show at a nightclub.

[24]     In May and June 2018, on numerous occasions, I noticed that, in my office at work, my documents and files were shuffled around, my personal belongings were sifted through, my artwork was rearranged, the furniture was moved, and my phone was used to call Daniel Spinosa (male), General Manager of Movies, Pay-Per-View and Commerce.

[25]     In May and June 2018, I noticed that someone was using my personal usernames and passwords to log into my email accounts, iCloud account, bank accounts, LinkedIn account, and OneDrive account, and using my employee network account credentials and passwords to access highly sensitive documents of Respondent Comcast on sites developed and administered by Respondent DelCiello. I believed that the person doing this, and all other conduct related to hacking into my accounts, information, and office, was Respondent DelCiello.

[26]     In May and June 2018, my Wi-Fi access on my work computer was changed several times, preventing me from being able to receive or answer emails and shifting me from the secure network to the unsecured network.

[27]     In June 2018, I noticed that my personal computer and personal accounts were hacked, remote access to my personal computer was turned on, and a third party remote desktop application was installed on my computer, which I was unable to remove.

[28]     On June 1, 2018, I reported the numerous security breaches to my personal and work accounts to Respondent Comcast's information technology team.

[29]     On June 5, 2018, when I arrived to work, I was unable to enter Respondent Comcast's building when I swiped my badge and I was stopped by security.  I was told that my badge had been deactivated and the system showed my badge credentials were pending.

[30]     On June 6, 2018, I was told by Respondent Comcast's information technology team that my access to the internet and all of Respondent Comcast's internal websites had been blocked.

[31]     On June 7, 2018, in a quarterly performance meeting with Goldberg and Respondent DelCiello, Respondent Comcast gave me unwarranted performance criticism and made false statements about me.  I never saw or was aware of Respondent DelCiello participating in quarterly performance meetings with other employees indirectly reporting to him.

[32]     On June 7, 2018, I complained of sex discrimination to Nicole Chisholm (female), Senior Director, Human Resources.  I complained of Respondent DelCiello's comments and conduct of a sexual nature, and complained that Respondent DelCiello was hacking into, accessing, and deleting information from my personal and work accounts.  I complained that I believed Respondent DelCiello was doing this because he wanted to have a personal relationship with me, and because I had rebuffed his advances.  I complained that I

feared for my safety and security related to Respondent DelCiello. Chisholm's only response was to get Respondent Comcast's cybersecurity team involved to do an investigation.

[33]     Respondent Comcast failed to take any remedial or preventative action in response to my sex discrimination and retaliation complaints.

[34]     On June 9 and 10, 2018, my Wi-Fi access was blocked from my work computer so I was unable to log in remotely to complete a specific work task, assigned by Respondent DelCiello on June 8, 2018 and due June 11, 2018.

[35]     On June 11, 2018, upon my arrival to work and beginning my work task assigned by Respondent DelCiello, I discovered that the electronic file I was given was corrupt and I was unable to complete the task. I went to Respondent Comcast's information technology team who was unable to fix the file. The legal department was contacted and sent me a second copy of the file so that I could complete the task.

[36]     On June 13 and 14, 2018, Respondent DelCiello treated me in an increasingly hostile and aggressive manner. I believed that his harsh and demeaning treatment, including accusing me of things I did not do and unjustly criticizing my performance, was due to the fact that I am female and had complained of his sex discriminatory conduct and comments. I have never observed Respondent DelCiello treat a male and/or a noncomplaining female employee in a similar hostile and aggressive manner.

[37]     On June 15, 2018, in an email to Chisholm, I complained that Respondent DelCiello was becoming increasingly aggressive toward me, and that my accounts were still being hacked into and accessed, and my work assignments were being impacted.

[38]     On June 19, 2018, in a meeting with Chisholm, I again complained of sex discrimination. I complained that Respondent DelCiello continued to hack into, access, and

delete information from my personal and work accounts, and that I believed he was doing this because he wanted to have a personal relationship with me and because I had rebuffed his advances. I complained that I feared for my safety and security related to Respondent DelCiello. Chisholm was dismissive of my complaints.

[39]     Respondent Comcast failed to take any remedial or preventative action in response to my sex discrimination and retaliation complaints.

[40]     In or about July 2018, Respondent DelCiello told me that he had a Google Voice Assistant in his office that he could give me to take home. Google Voice Assistants are easy to hack into, and allow the hacker to listen to conversations that are happening around the device.

[41]     In or about July 2018, Respondent DelCiello asked me if I had Sonos Sound Bar in my house. Sonos Sound Bars are connected to Amazon Alexa Voice Assistants, which are easy to hack into, and allow the hacker to listen to conversations that are happening around the device.

[42]     On or about July 4, 2018, I noticed that my personal email account was accessed from a Comcast Cable, Philadelphia IP address location.

[43]     One July 10, 2018, in a meeting with Chisholm, I again complained of sex discrimination. I complained that Respondent DelCiello continued to hack into, access, and delete information from my personal and work accounts, and that I believed he was retaliating against me because I was complaining of his sex discriminatory conduct. I complained that I feared for my safety and security related to Respondent DelCiello. Chisholm's only response was that she heard back on the forensic analysis regarding my work computer and phone, that the cybersecurity investigation was closed, that no evidence was found that anyone was in my office,

that no evidence was found showing that anyone hacked into my computer, and that someone could have stolen my passwords. She said that they would ship my computer and phone back to my office.

[44]     Respondent Comcast failed to take any remedial or preventative action in response to my sex discrimination and retaliation complaints.

[45]     On July 27, 2018, I discovered that my personal accounts had been synced to my work accounts.

[46]     On August 17, 2018, I reported to Respondent Comcast's information technology team the numerous security breaches and remote access to my accounts and documents.

[47]     In late August 2018, I received my work computer back, but did not receive my work cell phone back, as I was told that my phone's battery expanded and broke the frame around it. My work cell phone contained evidence that Respondent DelCiello had accessed my phone and accounts.

[48]     On August 29, 2018, Respondent DelCiello arrived late to a meeting that was held in a conference room adjacent to my office. Following the meeting, when I went back to my office and logged on to my computer, I noticed that there was new code installed on my computer. My research on the code confirmed that Respondent DelCiello had hacked my computer and installed the code.

[49]     In September 2018, after a security camera was installed in my office, Respondent DelCiello instructed me to move to a new office. Respondent Comcast had a moratorium on office moves, but Respondent DelCiello demanded that I move into a new office.

The new office did not have a security camera, and was in Respondent DelCiello's direct line of sight.

[50]     Respondent DelCiello repeatedly sends me text messages, instead of emails, especially when he sees me attempting to address the numerous security breaches into my accounts, and tries to divert my attention away from addressing the issues that he has created.

[51]     On September 7, 2018, I met with Chisholm to inform her that I was interested in applying for an Executive Director position within another team at Respondent Comcast.  Chisholm stated that I needed to tell my manager before interviewing for the position.

[52]     On September 7, 2018, after I met with Chisholm, I applied for the open Executive Director, Strategy and Operations position.  I was qualified for the position.

[53]     In early October, when Respondent DelCiello learned that I was applying for another position at Respondent Comcast, he stated to me: I hope you're not trying to get away from something.

[54]     On October 4, 2018, Chisholm sent me an email, stating that Respondent DelCiello approached her and demanded to know what position I was pursuing.  The position I was pursuing reported to Nancy Spears (female), Vice President, Digital Media Distribution and Monetization.

[55]     On October 4, 2018, after I received Chisholm's email, I saw Respondent DelCiello meeting with Spinosa, Spears' supervisor.

[56]     On October 5, 2018, in a meeting, Respondent DelCiello told me that he would like to live a life of crime, that it would be so easy and thrilling, that he could make so much money, and that he could open some offshore accounts in the Cayman Islands.

[57]     On October 8, 2018, in a quarterly performance meeting with Goldberg, Respondent Comcast gave me unwarranted performance criticism and made false statements about me.

[58]     On or about October 9, 2018, I interviewed with Alex Grebel (male), Senior Recruiter, for the Executive Director, Strategy and Operations position.  Grebel told me that Chisholm had contacted him about me before the interview.

[59]     On October 12, 2018, I interviewed with Spinosa for the Executive Director, Strategy and Operations position.

[60]     On October 12, 2018, I interviewed with Christopher Reynolds (male), Executive Director, Technology and Product, for the Executive Director, Strategy and Operations position.

[61]     On October 17, 2018, I interviewed with Spears for the Executive Director, Strategy and Operations position.

[62]     On October 17, 2018, I interviewed with Dina Galeotafiore (female), Vice President, Human Resources, for the Executive Director, Strategy and Operations position.

[63]     On October 18, 2018, I interviewed with Sudhir Muralidhar (male), Executive Director, Video and Entertainment Services, for the Executive Director, Strategy and Operations position.

[64]     On October 18, 2018, I complained to Chisholm that the issues involving Respondent DelCiello's sex discriminatory conduct toward me and the security of my accounts were still not resolved.

[65]     Respondent Comcast failed to take any remedial or preventative action in response to my sex discrimination and retaliation complaints.

[66]     On or about October 29, 2018, Respondent DelCiello came into my office and shut the door.  In a condescending tone, Respondent DelCiello asked me what was wrong.  I teared up, and stated that he should know what was wrong, and that all of my accounts, even my bank accounts, have been compromised.  Respondent DelCiello appeared flustered and denied any involvement or knowledge.  Respondent DelCiello then asked me to tell him the names of everyone who I told about these issues, and what I told each person.  Respondent DelCiello told me that I should go to William J.T. Strahan (male), Executive Vice President, Human Resources.

[67]     On or about October 30, 2018, my personal LinkedIn account was hacked into and accessed, and my account settings were changed to "follow" Strahan.

[68]     On October 30, 2018, Manor's direct report, Premal Shah (male), Director of Strategic Development, told me, without explanation, that he would be spearheading the upcoming high-level meeting with Respondent Comcast's executives related to projects that I had been managing for over a year and which comprised approximately half of my job duties and responsibilities.

[69]     Respondent Comcast, without explanation, excluded me from the upcoming executive meeting that was directly related to my job duties and responsibilities, and removed half of my job duties and responsibilities from me.

[70]     Respondent Comcast excluded me from the upcoming executive meeting that was directly related to my job duties and responsibilities, and removed half of my job duties and responsibilities from me because of my sex and/or my complaints of sex discrimination.

[71]     Respondent Comcast assigned half of my job duties and responsibilities to Manor (male).  I am more qualified to perform my job duties and responsibilities than the

noncomplaining male employee to whom Respondent Comcast assigned my job duties and responsibilities.

[72]      On October 31, 2018, in a meeting with Chisholm, I again complained of sex discrimination, and stated that I feared for my safety and security because Respondent DelCiello was stalking me. I complained that Respondent DelCiello had accessed all of my personal and work accounts. I complained that Respondent DelCiello was acting in an erratic and aggressive manner toward me, and that this sex- and retaliatory-based hostile work environment to which I was being subjected was causing me significant stress and anxiety. Chisholm's only response was that Respondent Comcast could offer me identity theft protection.

[73]      Respondent Comcast failed to take any remedial or preventative action in response to my sex discrimination and retaliation complaints.

[74]      On November 2, 2018, I discovered that the two-step verification for my personal W-Fi account was cancelled.

[75]      On November 2, 2018, I worked from my home office, due to the stress and anxiety caused by the sex discriminatory and retaliatory hostile work environment to which I was being subjected.

[76]      On November 3, 2018, my personal LinkedIn account was accessed and changed.

[77]      On November 9, 2018, I sent an email to Chisholm, informing her that I found a folder on my computer that contained many of the calendar invitations and emails that were deleted from my work computer, and that the folder contained deleted emails from Uber, alerting me that someone had accessed the Uber accounted associated with my work cell phone and my corporate credit card. I asked whether the information technology team could identify

the person who accessed my account based on the IP address contained in the email I forwarded from Uber. Chisholm's only response was that she would forward my email to the appropriate individuals.

[78]     In or about mid-November 2018, I discovered that DelCiello was using my employee credentials to access the profiles, including photos and biographies, of Respondent Comcast's high-level male executive employees, and confidential documents and information unrelated to my work and assignments, making it appear to other employees that I was seeking out and viewing these items, which I was not.

[79]     On November 26, 2018, Respondent Comcast failed to promote me to Executive Director, Strategy and Operations position. Spears informed me that I was not selected for the position, and that Respondent Comcast selected another internal candidate for the position.

[80]     I received no explanation, including the selection criteria, as to why I was denied the promotion to Executive Director, Strategy and Operations.

[81]     Respondent Comcast failed to promote me to Executive Director, Strategy and Operations because of my sex and/or my complaints of sex discrimination.

[82]     On November 26, 2018, in a phone call with Delaney Huffman (female), Senior Employee Relations Specialist, I complained of sex discrimination and retaliation. I complained of Respondent DelCiello's comments and conduct of a sexual nature, and complained that Respondent DelCiello was hacking into, accessing, and deleting information from my personal and work accounts. I complained that I believed Respondent DelCiello was doing this because he wanted to have a personal relationship with me, and because I had rebuffed his advances and complained of sex discrimination. I complained that I did not believe that this

would be happening to me if I were male.  I complained that Respondent DelCiello was cyberstalking me and cyber-assaulting me, and that I feared for my safety and security related to Respondent DelCiello.  I complained that I believed that Respondent DelCiello sabotaged my anticipated promotion to Executive Director.  Delany stated that Respondent Comcast has not spoken with Respondent DelCiello regarding his conduct toward me.

[83]     I found Respondent DelCiello's comments and conduct, including but not limited to the examples set forth herein, to be offensive, based on my sex and/or my complaints of sex discrimination, and contributing to the hostile work environment that I experienced.

[84]     Respondents' sex discriminatory and retaliatory conduct toward me has caused me emotional distress.

[85]     Respondent Comcast has failed to take action to remedy or prevent the sex discrimination and retaliation to which I have been subjected.

[86]     Respondent Comcast's comments and conduct evidence a bias against female employees.

[87]     Male employees with less experience and fewer qualifications than I have hold Senior Director, Executive Director, and Vice President positions.

[88]     I am currently the longest-serving female employee indirectly and directly reporting to Respondent DelCiello.

[89]     I am currently the longest-serving female employee directly reporting to Goldberg.

[90]     The only other female employees that report directly to Goldberg and indirectly to Respondent DelCiello were hired within the last six (6) months.

[91]    Other female employees that previously reported to Goldberg and Respondent DelCiello were demoted and/or pushed out and/or treated in a hostile manner.

[92]    Respondent Comcast has an underrepresentation of female employees in high level positions.

**B.**  Based on the aforementioned, I allege that Respondents have discriminated against me because of my sex (female), and have retaliated against me for complaining of sex discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"), and the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1101, *et seq.* ("PFPO").

4.    The allegations in Paragraph 3 hereof constitute unlawful discriminatory and retaliatory practices in violation of:

    __X__    **Pennsylvania Human Relations Act (Act of October 27, 1955, P.L. 744, as amended) Section 5 Subsection(s):  __(a); (d); (e)__**

    ____    Section 5.1 Subsection(s) _____

    ____    Section 5.2 Subsection(s) _____

    ____    Pennsylvania Fair Educational Opportunities Act (Act of July 17, 1961, P.L. 766, as amended) Section 4 Subsection(s) _____

5.    Other action based upon the aforesaid allegations has been instituted by the Complainant in any court or before any other commission within the Commonwealth of Pennsylvania as follows:

    __X__    **This charge will be referred to the EEOC for the purpose of dual filing.**

6.    The Complainant prays that Respondents be required to:

(a) Make the Complainant whole.

(b) Eliminate all unlawful discriminatory and retaliatory practice(s) and procedure(s).

(c) Remedy the discriminatory and retaliatory effect of past practice(s) and procedure(s).

(d) Take further affirmative action necessary and appropriate to remedy the violation complained of herein.

(e) Provide such further relief as the Commission deems necessary and appropriate.

## VERIFICATION

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.

11/29/18
(Date Signed)

_Cathy Beazley_
(Signature)    Cathy Beazley
REDACTED
Philadelphia, PA 19103

# EXHIBIT B

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

Received

FEB 28 2019

PA Human Relations Commission
Philadelphia Regional Office

## SECOND COMPLAINT

| | | |
|---|---|---|
| COMPLAINANT: | : | |
| | : | |
| **CATHY BEAZLEY** | : | Docket No. 201802570 |
| | : | |
| v. | : | |
| | : | |
| RESPONDENTS: | : | |
| | : | |
| **COMCAST CORPORATION** | : | |
| | : | |
| and | : | |
| | : | |
| **COMCAST CABLE COMMUNICATIONS** | : | |
| **MANAGEMENT, LLC** | : | |
| | : | |
| and | : | |
| | : | |
| **COMCAST (CC) OF WILLOW GROVE** | : | |
| | : | |
| and | : | |
| | : | |
| **MICHAEL DELCIELLO, aider and abettor** | : | |
| | : | |

1. The Complainant herein is:

   Name:      Cathy Beazley
   Address:   REDACTED
              Philadelphia, PA 19103

2. The Respondents herein are:

   Names:     Comcast Corporation, Comcast Cable Communications Management,
              LLC, and Comcast (CC) of Willow Grove (collectively, "Respondent
              Comcast"); Michael DelCiello, aider and abettor ("Respondent
              DelCiello")
   Address:   1701 JFK Boulevard
              Philadelphia, PA 19103

3. I, <u>Cathy Beazley</u>, the Complainant herein, allege that I was subjected to unlawful discrimination because of my sex (female) and unlawful retaliation because of my complaints of unlawful sex discrimination, as set forth below:

**Discrimination and Retaliation**

    **A. I specifically allege, in addition to that set forth in my first Complaint, including, but not limited to, the following, all of which has occurred since filing my first Complaint:**

[1]      On November 29, 2018, I informed Respondent Comcast—including Joshua Goldberg (male), Vice President of Strategic Development, Respondent Michael DelCiello (male), Managing Director of Strategic Development, Nicole Chisholm (female), Senior Director, Human Resources, and Delaney Huffman (female), Senior Employee Relations Specialist—that I filed a Complaint with the PHRC.

[2]      Respondents have, without explanation, excluded me from important meetings relevant to my job duties and responsibilities.

[3]      Respondents have acted in an increasingly hostile and dismissive manner toward me.

[4]      Respondents have assigned me numerous administrative tasks, which are not part of my job duties and responsibilities and which are tasks typically handled by an administrative assistant.

[5]      On December 3, 2018, I received an email from Respondents Comcast stating that I was in violation of Respondent Comcast's Code of Conduct and travel policy. This was false.

[6]     On December 3, 2018, I discovered that my corporate credentials had been used to log in and delete my positive 2017 performance review and my 2018 performance self-assessment detailing my accomplishments over the past year, which had I completed in preparation for my 2018 year end performance review.

[7]     On December 3, 2018, I was told that Respondent Comcast's cybersecurity team found a second iPhone registered in my name.  This would enable someone else to access my corporate credentials, passwords, and email accounts.  The cybersecurity team stated the iPhone was deactivated.  Respondent Comcast did not tell me who was using the phone registered in my name, how the phone was registered in my name, or how the phone was found.

[8]     On December 5, 2018, Respondent Comcast's cybersecurity team confirmed that the IP addresses that had accessed my accounts, using my corporate credentials, did not belong to any of my devices.  Respondent Comcast did not tell me who was using my credentials or accessing my accounts.

[9]     On December 8, 2018, I noticed that Respondent Delciello was permitted to review, edit, and approve my 2018 year-end performance review.

[10]     On December 11, 2018, Respondent Comcast failed to promote me to the Executive Director, Strategy and Business Operations position for which I applied and was qualified.  Instead of me, Respondent Comcast promoted Anna Gohmann.  I was more qualified for the position than the noncomplaining employee that was promoted.

[11]     I received no explanation, including the selection criteria, as to why I was denied the promotion to Executive Director, Strategy and Business Operations.

[12]     Respondent Comcast failed to promote me to Executive Director, Strategy and Business Operations because of my complaints of sex discrimination.

[13]     On numerous occasions, upon returning to my office, I noticed that my documents and files were shuffled around, my personal belongings were sifted through, my locked desk had been opened and accessed, and someone had logged into my personal LinkedIn account from my work computer.

[14]     On December 14, 2018, I met with Harrison Lee (male), Employee Relations, and Huffman (female) in connection with my sex discrimination and retaliation complaints. I provided information and documents related to my complaints.

[15]     On January 2, 2019, I noticed that someone attempted to remove my nameplate from my office door and that my locked desk had been opened and accessed.

[16]     On January 3, 2019, I met with Lee (male) and Huffman (female) in connection with my sex discrimination and retaliation complaints. I provided information and documents related to my complaints.

[17]     On January 10, 2019, I was told by Respondent Comcast's information technology team that the second iPhone registered in my name was not deactivated, contrary to what I was told on December 3, 2018. The iPhone remains in the possession of Respondent Comcast's IT team. Respondent Comcast did not tell me who was using the phone registered in my name, how the phone was registered in my name, how the phone was found, why the phone was not deactivated, and why I had previously been told that the phone had been deactivated.

[18]     On January 25, 2019, in an email to Lee (male) and Huffman (female), I complained of sex discrimination and retaliation. I complained: "I continue to experience suspicious activity; 1) in my current office, (2) on both my personal/work cell phones, (3) on my

personal accounts (LinkedIn, etc.), and, (4) via my professional work accounts (Outlook/Exchange, etc.) with someone utilizing my corporate credentials. In addition, while I've sent multiple inquiries to Josh Goldberg regarding arranging a time to discuss my 2018 year-end performance review and the subsequent 2019 goal-setting exercise which is due February 1, 2019, I have not received any response. In fact, after sending one such inquiry, and on the same day I reported suspicious activity within my Outlook account, I immediately received the attached hostile and dismissive email from Michael Delciello and Josh Goldberg regarding my performance. Michael Delciello and Josh Goldberg have also been excluding me from important meetings relevant to my roles and responsibilities including several meetings with Fraser Stirling, Jeanine Heck and Neala Gollomp regarding the Alexa partnership. I believe that this is continued sex discrimination and retaliation because of my complaints of sex discrimination."

[19]     Respondent Comcast failed to take any remedial or preventative action in response to my sex discrimination and retaliation complaints.

[20]     On January 28, 2019, I was told that my order for a new computer could not be processed because I already had two (2) Apple Mac computers assigned to me. I stated that I only had one (1) used Apple MacBook Air computer (dated 2015) in my possession, and only used that one (1) computer throughout my employment with Respondent Comcast. I was shown that there were two (2) Apple Mac computers assigned to me—a MacBook Pro and a MacBook Air—and one (1) of the computers in the system did not include the unique ID number customary for Respondent Comcast. Respondent Comcast did not tell me who was in possession of the other Apple Mac computer that was in my name or why there was another computer in my name.

[21]     On January 28, 2019, I was told that the cybersecurity and information technology investigation (into the unauthorized access to my systems and documents by someone using my corporate credentials) was closed, and that Respondent Comcast could not or would not identify the perpetrator.

[22]     On January 30, 2019, in a meeting with Lee (male) and Huffman (female), I was told that the investigation into my sex discrimination and retaliation complaints was closed, and that Respondent Comcast could not "validate the concerns regarding [Respondent Delciello (male)]" or confirm that any of the incidents outlined in my complaint actually took place. Respondent Comcast credited Respondent Delciello's denials of my allegations, and denied that my job duties and responsibilities were impacted.

[23]     On February 4, 2019, in an email from Goldberg (male), I received a negative year-end performance review. The review stated that I was "not meeting expectations of a Director on this team, which is why [I was rated] as **Off Track** for 2018." My performance did not warrant a negative, or Off Track, performance review.

[24]     I received a negative, Off Track performance review because of my sex and/or my complaints of sex discrimination.

[25]     This was the first negative performance review I have received.

[26]     Before complaining of sex discrimination, I received positive performance reviews and had no indication my job was in jeopardy.

[27]     On February 20, 2019, in an email to Goldberg (male), Respondent DelCiello (male), Chisholm (female), Huffman (female), and Lee (male), I complained of sex discrimination and retaliation. I complained: "Last year, before complaining of sex discrimination and retaliation, I received no below average ratings in my 2017 Year End

Performance Review and received an above average bonus overall with the highest stock award possible. I feel certain that the negative 2018 Year End Performance Review I received is retaliatory based on my complaint of sex discrimination and retaliation filed with the PHRC against Comcast and Michael Delciello on November 29, 2018." In my email, I included a response to the false statements and misrepresentations in my year-end performance review.

[28]     Respondent Comcast failed to take any remedial or preventative action in response to my sex discrimination and retaliation complaints.

[29]     On February 27, 2019, I received my Annual Compensation Statement. This year, for 2018, I received an Annual Bonus Payment of $7,611.02 and a Performance Multiplier of 25%. Last year, for 2017, I received an Annual Bonus Payment of $12,660.40 and a Performance Multiplier of 95%. My bonus payment last year was prorated, since I began my employment with Respondent Comcast on June 5, 2017, and I closed no deals at Respondent Comcast in 2017. If I had worked at Respondent Comcast for all of 2017, and my bonus payment was not prorated, my bonus last year would have been approximately $21,702.00. My bonus payment and performance multiplier this year were substantially less than last year, despite having worked at Respondent Comcast for the full year and despite having closed four (4) deals in 2018. One (1) of the deals that I closed in 2018 brought in $1,600,000 in gross revenue within the first sixty (60) days of being launched in December 2018.

[30]     Respondent Comcast awarded me a substantially lower bonus payment and performance multiplier because of my sex and/or my complaints of sex discrimination.

[31]     Respondents' sex discriminatory and retaliatory conduct toward me has caused me economic harm.

[32]     Respondents' sex discriminatory and retaliatory conduct toward me has caused me emotional distress.

[33]     I have taken time off from work as a result of the stress and anxiety I was experiencing due to the hostile work environment to which I was being subjected because of my sex and/or complaints of sex discrimination.

[34]     Respondent Comcast has failed to take action to remedy or prevent the sex discrimination and retaliation to which I have been subjected.

[35]     Respondent Comcast's comments and conduct evidence a bias against female employees.

**B.**   Based on the aforementioned, I allege that Respondents have discriminated against me because of my sex (female), and have retaliated against me for complaining of sex discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"), and the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1101, *et seq.* ("PFPO").

4.     The allegations in Paragraph 3 hereof constitute unlawful discriminatory and retaliatory practices in violation of:

**   X   **     **Pennsylvania Human Relations Act (Act of October 27, 1955, P.L. 744, as amended) Section 5 Subsection(s):   (a); (d); (e)   **

_____     Section 5.1 Subsection(s) _____

_____     Section 5.2 Subsection(s) _____

_____     Pennsylvania Fair Educational Opportunities Act (Act of July 17, 1961, P.L. 766, as amended) Section 4 Subsection(s) _____

5.    Other action based upon the aforesaid allegations has been instituted by the Complainant in any court or before any other commission within the Commonwealth of Pennsylvania as follows:

    **X**       **This charge will be referred to the EEOC for the purpose of dual filing.**

6.    The Complainant prays that Respondents be required to:

(a) Make the Complainant whole.

(b) Eliminate all unlawful discriminatory and retaliatory practice(s) and procedure(s).

(c) Remedy the discriminatory and retaliatory effect of past practice(s) and procedure(s).

(d) Take further affirmative action necessary and appropriate to remedy the violation complained of herein.

(e) Provide such further relief as the Commission deems necessary and appropriate.

## **VERIFICATION**

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.

2/28/19
_____          _____
(Date Signed)                    (Signature)    Cathy Beazley
                                 REDACTED
                                 Philadelphia, PA 19103

# EXHIBIT C

Received

JUN 2 6 2019

PA Human Relations Commission
Philadelphia Regional Office

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

## THIRD COMPLAINT

COMPLAINANT:                                       :

**CATHY BEAZLEY**                                  :          Docket No. 201802570

v.                                                 :

RESPONDENTS:                                       :

**COMCAST CORPORATION**                            :

and                                                :

**COMCAST CABLE COMMUNICATIONS**                   :
**MANAGEMENT, LLC**                                :

and                                                :

**COMCAST (CC) OF WILLOW GROVE**                   :

and                                                :

**MICHAEL DELCIELLO, aider and abettor**           :

                                                   :

1.  The Complainant herein is:

    Name:      Cathy Beazley
    Address:   **REDACTED**
             Philadelphia, PA 19103

2.  The Respondents herein are:

    Names:     Comcast Corporation, Comcast Cable Communications Management,
             LLC, and Comcast (CC) of Willow Grove (collectively, "Respondent
             Comcast"); Michael DelCiello, aider and abettor ("Respondent
             DelCiello")
    Address:   1701 JFK Boulevard
             Philadelphia, PA 19103

3. I, <u>Cathy Beazley</u>, the Complainant herein, allege that I was subjected to unlawful discrimination because of my sex (female) and unlawful retaliation because of my complaints of unlawful sex discrimination, as set forth below:

**<u>Discrimination and Retaliation</u>**

**A. I specifically allege, in addition to that set forth in my first and second Complaints, including, but not limited to, the following, all of which has occurred since filing my second Complaint:**

[1]     On February 28, 2019, I informed Respondent Comcast—including Joshua Goldberg (male), Vice President of Strategic Development, Respondent Michael DelCiello (male), Senior Vice President, Business Development, Nicole Chisholm (female), Senior Director, Human Resources, Delaney Huffman (female), Senior Employee Relations Specialist, and Harrison Lee (male), Employee Relations—that I filed a second Complaint with the PHRC.

[2]     On March 11, 2019, I met with Huffman (female) regarding my sex discrimination and retaliation complaints. I provided information and documents related to my complaints. I stated that I did not understand how Respondent DelCiello (male), following my numerous sex discrimination and retaliation complaints against him, was recently promoted in connection with the same project that allegedly resulted in me receiving a below average performance rating. I received no explanation for the same.

[3]     Respondent Comcast failed to take any remedial or preventative action in response to my sex discrimination and retaliation complaints.

[4]     Respondents have, without explanation, excluded me from important meetings relevant to my job duties and responsibilities.

[5]     Respondents have acted in an increasingly hostile and dismissive manner toward me.

[6]     Respondents have assigned me administrative tasks, which are not part of my job duties and responsibilities and which are tasks typically handled by an administrative assistant.

[7]     On March 27, 2019, in an email to Lee (male) and Huffman (female), I complained of sex discrimination and retaliation. I complained "that I continue to experience relentless harassment and retaliation by Michael Delciello. Following my email to you on March 22nd regarding Michael manipulating the Pipedrive tool to degrade my job performance on specific projects, Michael proceeded to schedule a meeting entitled 'Pipedrive Review' yesterday which included only me, Michael, Josh Goldberg, Wyatt Manor and David Wong. Michael demanded that I provide detailed updates on all of my projects and at the end of the one hour meeting, Josh asked Michael 'Is that what you were looking for?' and Michael stated 'Yes. Let's see what happens in 90 days.' In other words, Michael made an implied threat regarding my job performance over the next 90 days. I believe this is direct retaliation by Michael Delciello due to my complaints of sex discrimination, harassment and retaliation."

[8]     Respondent Comcast failed to take any remedial or preventative action in response to my sex discrimination and retaliation complaints.

[9]     On April 3, 2019, in an email to Lee (male) and Huffman (female), I complained of continued retaliation by Respondent DelCiello, and asked them to "advise on the best way to ensure my safety and security in the office."

[10]     On April 9, 2019, in an email to Lee (male) and Huffman (female), I complained that I continued to have cybersecurity issues following "my formal complaint of

discrimination and harassment against Comcast and Michael Delciello in late November 2018. For these reasons, while I was in California, I filed a formal report with the FBI detailing all of the cyberstalking, harassment and security issues I've been experiencing during my tenure at Comcast. I have consistently communicated to your team as well as the HR and Security teams that I do not feel safe in close proximity to Michael Delciello due to his ongoing personal attacks, intimidation and harassment including but not limited to the incident outlined below where he forcibly hit my office window on the afternoon of Wednesday, April 3rd."

[11]    Respondent Comcast failed to take any remedial or preventative action in response to my sex discrimination and retaliation complaints.

[12]    On April 18, 2019, in a meeting with Goldberg (male) and Chisholm (female), I was placed on a thirty (30) day Coaching Plan. My performance did not warrant a Coaching Plan. I was told that, if my performance did not improve within thirty (30) days, I would be placed on a Performance Improvement Plan ("PIP").

[13]    On April 18, 2019, following the above meeting, I sent an email to Goldberg (male), Respondent DelCiello (male), Chisholm (female), Huffman (female), and Lee (male), complaining of sex discrimination and retaliation in connection with my quarterly performance review and the Coaching Plan on which I was placed. I provided a summary of my accomplishments for 2019. I complained: "As noted above, my performance does not warrant a Coaching Plan, and I strongly believe that the disciplinary action taken against me today as part of my Q1 2019 performance review is in retaliation for the sex discrimination and retaliation complaints I filed against Comcast and Michael Delciello."

[14]    On April 22, 2019, in an email to Goldberg (male), Respondent DelCiello (male), Chisholm (female), Huffman (female), and Lee (male), I complained of sex

discrimination and retaliation in connection with the Coaching Plan I received. I rebutted the misrepresentations in the Coaching Plan, provided context, and included examples of my accomplishments for 2019. I complained: "I believe that the attached Coaching Plan was issued to me because of my sex and my complaints of sex discrimination and retaliation that I filed against Comcast and Michael Delciello with the EEOC and PHRC on November 29, 2018 and February 28, 2019."

[15]    Respondent Comcast failed to take any remedial or preventative action in response to my sex discrimination and retaliation complaints.

[16]    On or about April 23, 2019, Respondents removed certain of my job duties and assigned them to Premal Shah (male), Director of Strategic Development.

[17]    On May 2, 2019, my apartment was broken into at 5:30 pm, per the digital lock on my apartment door. I was on a conference call at the time, which I called into at 5:31 pm from my office at Respondent Comcast. The apartment building video footage shows a man exiting the elevator in the lobby of my apartment building at approximately 5:34 pm. I was concerned that the man in the video was Respondent DelCiello. I reported the incident to the police. At the police detective's request, I showed him a photo of Respondent Delciello, and the detective told me that he believed that the man in the video "strongly resembled" Respondent DelCiello.

[18]    On May 20, 2019, in a meeting with Goldberg (male) and Chisholm (female), I was placed on a thirty (30) day PIP. My performance did not warrant a PIP. I was told that, if my performance did not improve within thirty (30) days, my employment would be terminated.

[19]     On May 21, 2019, in an email to Goldberg (male), Respondent DelCiello (male), Chisholm (female), Huffman (female), Lee (male), and Andrew Schrader (male), Comcast Corporate Security, I complained of sex discrimination and retaliation and a response to the false statements and misrepresentations in the PIP.  I complained: "As noted above, I do not agree that my performance warrants a Performance Improvement Plan and I do not feel comfortable signing the document as I strongly believe that the disciplinary action taken against me is because I am female and in retaliation for the sex discrimination and retaliation complaints I filed against Comcast and Michael Delciello."

[20]     Respondent Comcast failed to take any remedial or preventative action in response to my sex discrimination and retaliation complaints.

[21]     On June 3, 2019, in an email to Lee (male) and Huffman (female), I stated that I had "applied for the recently posted role of Executive Director, Business Development within the Strategic Development team," and attached my cover letter and updated resume.

[22]     On June 4, 2019, in an email from Chisholm (female), I was told that I was "not eligible to transfer internally while [I was] on a performance improvement plan."

[23]     Respondent failed to promote me because of my sex and/or my complaints of sex discrimination.

[24]     On June 5, 2019, in an email to Goldberg (male), Respondent DelCiello (male), Chisholm (female), Huffman (female), Lee (male), and Schrader (male), I complained "that, in connection with the recent break-ins to my apartment, there is video footage. I have serious concerns that the person shown in the video is Michael Delciello. I am petrified by this fact."

[25]     On June 5, 2019, after I sent the above email, I was told that Respondent Comcast would be conducting an investigation and would obtain the relevant video footage.

[26]     On June 6, 2019, I was instructed by Chisholm that, given the ongoing investigation related to Respondent Delciello, I was to leave the office and work remotely from home or another location.

[27]     On June 7, 2019, in a phone call from Sandra Lau (female), Senior Vice President, Human Resources, and Chisholm (female), I was told that Respondent Comcast was cancelling my travel plans to attend a work-related conference in California the following week. I responded that this cancellation would have a detrimental impact on my ability to fulfill my job responsibilities related to the PIP, and it would also have an adverse impact on my professional reputation with my colleagues and potential business partners.

[28]     On June 15, 2019, in an email from Chisholm (female), I was instructed to remain out of the office "because [Respondent Comcast's] investigation is ongoing."

[29]     On June 19, 2019, in a phone call from Lau (female) and Chisholm (female), Respondent Comcast terminated my employment, effective immediately. The stated reason was that I used "poor judgment" in sending the June 5, 2019 email stating that I was concerned for my safety in connection with break-ins to my apartment and concerned that the person shown in the video was Respondent DelCiello. I was not told the outcome of Respondent Comcast's alleged investigation. There was no reference made to my PIP or any alleged performance deficiency.

[30]     The stated reason for my termination is pretext and/or a statement made because of my sex and/or my complaints of sex discrimination.

[31]     Respondent Comcast terminated my employment because of my sex and/or my complaints of sex discrimination.

[32]     On June 19, 2019, following the above phone call, I sent an email to Huffman (female), Lee (male), and Schrader (male), complaining of sex discrimination and retaliation.  I complained: "I wanted to inform you that I received a phone call from Sandy Lau and Nicole Chisholm this evening and Sandy informed me that based on the fact that I sent you an email stating I was concerned for my safety due to the break ins at my apartment, my employment has been terminated by Comcast for, in Sandy's words, using 'poor judgment' for sending the email reporting my safety concerns.  I'm deeply troubled by the unwarranted action taken by Comcast and its officers today in response to my safety concerns and feel certain the termination of my employment is directly related to my complaints of sex discrimination and retaliation that I filed against Comcast and Michael Delciello with the PHRC and EEOC on November 29, 2018 and February 28, 2019."

[33]     I received no response to my email.

[34]     I received no documents in connection with my termination.

[35]     Respondent Comcast failed to inform me of the results of its investigation into my complaints.

[36]     I had no opportunity to remain employed with Respondent Comcast.

[37]     Respondents' sex discriminatory and retaliatory conduct toward me has caused me economic harm.

[38]     Respondents' sex discriminatory and retaliatory conduct toward me has caused me emotional distress.

[39]    Respondent Comcast failed to take action to remedy or prevent the sex discrimination and retaliation to which I was subjected.

[40]    Respondent Comcast's comments and conduct evidence a bias against female employees and employees who engage in protected activity.

**B.**  Based on the aforementioned, I allege that Respondents have discriminated against me because of my sex (female), and have retaliated against me for complaining of sex discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"), and the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1101, *et seq.* ("PFPO").

4.    The allegations in Paragraph 3 hereof constitute unlawful discriminatory and retaliatory practices in violation of:

   __X__     **Pennsylvania Human Relations Act (Act of October 27, 1955, P.L. 744, as amended) Section 5 Subsection(s):  __(a); (d); (e)__**

   ____    Section 5.1 Subsection(s) _____

   ____    Section 5.2 Subsection(s) _____

   ____    Pennsylvania Fair Educational Opportunities Act (Act of July 17, 1961, P.L. 766, as amended) Section 4 Subsection(s) _____

5.    Other action based upon the aforesaid allegations has been instituted by the Complainant in any court or before any other commission within the Commonwealth of Pennsylvania as follows:

   __X__     **This charge will be referred to the EEOC for the purpose of dual filing.**

6.    The Complainant prays that Respondents be required to:

(a) Make the Complainant whole.

(b) Eliminate all unlawful discriminatory and retaliatory practice(s) and procedure(s).

(c) Remedy the discriminatory and retaliatory effect of past practice(s) and procedure(s).

(d) Take further affirmative action necessary and appropriate to remedy the violation complained of herein.

(e) Provide such further relief as the Commission deems necessary and appropriate.

## VERIFICATION

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.

6/25/19
(Date Signed)

(Signature)   Cathy Beazley
REDACTED
Philadelphia, PA 19103

# EXHIBIT D

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To: **Cathy Beazley**<br>**c/o Console Mattiacci Law, 1525 Locust Street**<br>**Philadelphia, PA 19102** | From: **Philadelphia District Office**<br>**801 Market Street**<br>**Suite 1000**<br>**Philadelphia, PA 19107** |

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **17F-2020-60003** | **Kurt Jung,**<br>**State, Local and Tribal Program Manager** | **(267) 589-9749** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X] More than 180 days have passed since the filing of this charge.

☐ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X] The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u>** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u>** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

**Jamie R. Williamson,**
**District Director**

9/10/2020

*(Date Mailed)*

Enclosures(s)

cc:

**Lane Schiff Esq.**
**(Charging Party Attorney)**

**Comcast Corporation**
**Margaret M. McDowell Esq.**
**(Respondent Attorney)**

cc:        *(Sent by e-mail only: schiff@consolelaw.com; margaret.mcdowell@morganlewis.com)*

Lane Schiff Esq.
Console Mattiacci Law
1525 Locust Street
Philadelphia, PA 19102
schiff@consolelaw.com

Margaret M. McDowell Esq.
Morgan Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103
margaret.mcdowell@morganlewis.com